THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DEVIN SEATS, #R65374, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:24-cv-02175-SMY-GCS |
| | ) | |
| SGT. METHENY, | ) | |
| MICHAEL KRCMAR, | ) | |
| DONALD ROUNTREE, | ) | |
| SHANE SULSER, | ) | |
| JONATHAN DYE, and | ) | |
| CLAUDIA LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**SISON, Magistrate Judge:**

This matter is before the Court for consideration of the motion for summary judgment filed by Defendants Metheny, Krcmar, Rountree, Sulser, Dye, and Lewis (Doc. 51), asserting Plaintiff Devin Seats failed to properly exhaust his administrative remedies before filing suit. Plaintiff responded to the motion and Defendants filed a reply. (Doc. 54, 55). The motion was referred to the undersigned by Chief United States District Judge Staci M. Yandle pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(c) for a Report and Recommendation. (Doc. 64). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law and **DENY** the motion as detailed below.

### BACKGROUND

Plaintiff is currently incarcerated at Pontiac Correctional Center. He filed this *pro*

*se* civil action pursuant to 42 U.S.C. § 1983 on September 16, 2024, for alleged constitutional violations that arose on August 20, 2024, and thereafter, while he was in custody at Menard Correctional Center. (Doc. 1, 39).[1] Plaintiff claims he experienced deliberate indifference to his serious medical and mental health needs, was subjected to excessive force and retaliation, and was housed in unconstitutional conditions.

Plaintiff alleges he was on crisis watch on August 20, 2024, and began cutting his left arm due to his serious mental illness. (Doc. 39, p. 1). He showed Defendants Krcmar and Rountree his wounds and requested medical attention. They told him to "cut deeper" and failed to get medical help. Plaintiff continued to harm himself and begged for medical attention but Krcmar and Rountree ignored him.

Defendant Metheny sprayed Plaintiff with two cans of O.C. spray, then placed him in "extremely tight" handcuffs and shackles. (Doc. 39, p. 2). Rountree took Plaintiff to the holding cage. Metheny and Defendants Sulser and Dye told Plaintiff he was not allowed any medical attention because they did not care what he did or cut. Metheny, Sulser, and Dye instructed Defendant Nurse Lewis not to give Plaintiff any medical care. Lewis looked at Plaintiff's left arm wound but refused to give him any medical attention. *Id.* at p. 3.

Dye and Sulser placed Plaintiff back into his crisis watch cell, which was now contaminated with O.C. spray. (Doc. 39, p. 2-3). He was not permitted to shower. His skin was burning, he had an open wound, and he was forced to sleep on the contaminated

---

[1]    Plaintiff's First Amended Complaint was filed on May 27, 2025. (Doc. 38, 39).

floor with only a safety blanket and no mattress. Plaintiff remained in the cell under those conditions through August 26, 2024. *Id.* at p. 3. Dye and Sulser told Plaintiff he would stay there for a while because he was trying to sue everybody. Plaintiff suffered emotional pain and injury from this treatment.

Following screening of the original Complaint and First Amended Complaint (Doc. 1, 39) under 28 U.S.C. § 1915A, Plaintiff was permitted to proceed with the following claims:

Count 1:    Eighth Amendment claim for deliberate indifference to serious medical & mental health needs against Krcmar and Rountree for allowing Plaintiff to continue cutting himself, and against Krcmar, Rountree, Metheny, Sulser, Dye, and Lewis for depriving Plaintiff of medical attention for his self-inflicted arm laceration.

Count 2:    Eighth Amendment excessive force claim against Metheny for deploying O.C. spray on Plaintiff and against Rountree for placing Plaintiff in extremely tight handcuffs and shackles.

Count 3:    First Amendment retaliation claim against Sulser and Dye for keeping Plaintiff in the crisis watch cell without a shower or mattress in retaliation for Plaintiff's prior lawsuits.

Count 4:    Eighth Amendment cruel and unusual punishment claim against Sulser and Dye for housing Plaintiff in the crisis watch cell for approximately one week, denying him a shower to wash the O.C. spray off his body, and forcing him to sleep on the floor contaminated with O.C. spray without a mattress or adequate bedding.

Count 5:    State law claim for intentional infliction of emotional distress against all defendants for the conduct described in Counts 1-4.

(Doc. 17, 38).

Subsequently, Defendants filed the instant Motion for Summary Judgment on the

issue of exhaustion. (Doc. 51). Plaintiff opposed the motion (Doc. 54) and Defendants replied. (Doc. 55). The Court ordered supplemental briefing on the impact, if any, of *Perttu v. Richards*, 605 U.S. 460 (2025) (Doc. 56, 60) and the parties responded. (Doc. 59, 61).

The Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) on May 21, 2026. (Doc. 69). Plaintiff appeared via video from Pontiac and Defendants appeared by Assistant Attorney General Mitchell Deleel. Both parties chose not to submit additional evidence or testimony and instead proceeded directly to their legal arguments. The Court relies on the documentary evidence of record and the parties' oral arguments to arrive at the findings and conclusions below.

### FINDINGS OF FACT

**A.    *Grievance No. K4-0824-4003, dated August 20, 2024* (Doc. 52-2, p. 15-16)**

Plaintiff filed this emergency grievance to dispute an August 20, 2024, disciplinary ticket issued by Metheny for assault and disobeying a direct order. (Doc. 52-2, p. 17-18), claiming the ticket form was out of date and the charge was improper because it was based on Plaintiff's self-harm. *Id.* at p. 15. It was deemed non-emergent. *Id.* The grievance officer's report contained Metheny's statement that on August 20, 2024, he saw Plaintiff attempting to harm his left arm using the cell door and ordered Plaintiff several times to stop self-harming. *Id.* at p. 14. When Plaintiff did not stop, Metheny administered O.C. pepper spray to stop Plaintiff from further harming himself. According to Metheny, Plaintiff stopped but became combative, attempting to grab Metheny's arm through the food slot. Metheny claimed he suffered a small laceration when he pulled his hand away.

Page **4** of **13**

*Id.* This grievance was denied and Plaintiff appealed on January 4, 2025. *Id.* at p. 13. The appeal was received by the Administrative Review Board ("ARB") on January 16, 2025. *Id.*

**B.      *Grievance No. K4-1024-5348, dated October 4, 2024* (Doc. 52-2, p. 11-12)**

Plaintiff grieved that Dye, Sulser, and others held him for ten days in Menard's crisis watch cell 505 without a mattress (from August 19-29, 2024). The cell had feces, blood, and mace on the floor and walls. Plaintiff filed the grievance as an emergency, but it was deemed non-emergent on October 21, 2024. (Doc. 52-2, p. 11). On December 18, 2024, the Grievance Officer recommended denial of the grievance, noting Plaintiff was transferred to Pontiac on December 11, 2024, and the officer was unable to review the matter because Plaintiff's master file was no longer at Menard. *Id.* at p. 10. Plaintiff appealed the denial on January 6, 2025, and the ARB received Plaintiff's appeal on January 16, 2025. *Id.*

**C.      *Alleged Grievance Dated August 22, 2024***

In Plaintiff's response to the summary judgment motion, he claimed he filed another grievance on August 22, 2024, that does not appear in the records submitted by defendants. He asserted he filed this grievance regarding the events of August 20, 2024, while still on crisis watch, by handing the grievance form to C/O Big "E" Ellers on the 3:00-11:00 PM second shift at Plaintiff's Cell 505. (Doc. 54, p. 2). Plaintiff submitted his handwritten copy of this grievance. *Id.* at p. 11-12. The grievance copy states Plaintiff cut his left arm on August 20, 2024, and Krcmar and Rountree denied him medical attention. Metheny sprayed him with mace for no reason and then sprayed him with a second can

provided by Rountree. Rountree tightly shackled Plaintiff's ankles. Dye, Sulser, and Lewis refused to provide Plaintiff with medical attention or mental health services. Plaintiff was returned to his cell with no shower, no mattress, and the floor and walls were still contaminated with mace. *Id.* at p. 11-12.

Plaintiff stated he wrote two letters to the ARB to inquire about the grievance because his counselor had not responded. He submitted a handwritten copy of the second ARB letter, dated August 28, 2024. He alleged he gave this ARB letter to C/O Adkins for mailing. (Doc. 54, p. 2-4, 13-14). Plaintiff claimed he wrote a second grievance but did not describe its contents. He stated he wrote to his counselor on September 10, 2024, about the two grievances. *Id.* at p. 17. Menard officials never provided Plaintiff with a receipt or a number for either grievance.

Defendants' reply disputed Plaintiff's claim regarding the writing and submitting of the August 22, 2024, grievance, noting Menard and the ARB had no record of the grievance or its receipt. (Doc. 55).

### D.    *Pavey Hearing*

Defense counsel noted Plaintiff was able to file 38 grievances and completed appeals to the ARB during 2024. Five of those grievances were appealed from August 2024. Defendants concede the content of those grievances would be sufficient to exhaust Plaintiff's administrative remedies – but argue Plaintiff filed this action prematurely on September 16, 2024, without waiting for the ARB to rule on those appeals. Plaintiff filed additional grievances (including Grievance No. K4-1024-5348 and two others) *after* filing his Complaint in this case. Defendants argue this record shows Plaintiff had access to the

grievance procedure. However, they assert, none of these grievances were sufficient to exhaust Plaintiff's claims because the ARB disposition came after he filed this case. Accordingly, Defendants seek dismissal of this case.

Plaintiff responded that he did not file this case prematurely. He reiterated the procedure he described in his written response to the motion. Despite being on crisis watch, he obtained grievance forms from the C/O's. He submitted his grievances by placing them in the cell door for a C/O to pick up and place in the proper grievance box. Plaintiff gave the August 22, 2024, grievance to C/O "Big E" for filing but did not get a receipt number back. Normally a receipt is given within three or four days. He wrote twice to the counselor to inquire on the status of his grievances, with no response. He wrote to the ARB around August 28, 2024, and got no response. Plaintiff made his own copies of everything he filed. He asserted he is very familiar with the grievance process and the need to exhaust grievances. He argued this lawsuit is not premature because he attempted to exhaust his grievances but got no response or receipt from the prison or the ARB.

### LEGAL STANDARDS

#### A.    *Summary Judgment*

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. PROC. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue of material fact exists when "the evidence is such that a

reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *See Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citing *Pavey*, 544 F.3d at 742).[2]

## B.     The PLRA and Illinois Exhaustion Requirements

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *see also*

---

[2]     Supplemental briefing was ordered (Doc. 56) regarding the applicability of *Perttu v. Richards*, 605 U.S. 460 (2025), which held that where a factual dispute on exhaustion is intertwined with a factual dispute that goes to the merits of the underlying substantive claim, a jury trial is required on the intertwined issue(s). After reviewing the parties' submissions (Doc. 59, 61), the Court finds no issues of intertwinement requiring a jury trial on the exhaustion of administrative remedies. Plaintiff's retaliation claim in Count 3 (retaliatory denial of a shower and mattress) is based on his earlier lawsuit activity – not his attempts to file grievances relating to this case. Plaintiff does not raise a retaliation claim over the grievances he attempted to submit while on crisis watch, thus the exhaustion or non-exhaustion of those grievances is not intertwined with the merits of his claims. In contrast, the retaliation claim in *Perttu* was based on defendants' alleged destruction of the grievances relevant to exhaustion.

*Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

For a prisoner to properly exhaust his administrative remedies, he or she must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must be fully completed before the prisoner files suit; a case filed while a grievance appeal is still ongoing is premature and must be dismissed without prejudice. *See Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Because Plaintiff was an IDOC inmate when he filed this action, he was required to follow the grievance process set forth in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). This includes initiating the grievance with the counselor, submitting it to the grievance officer, and subjecting it to review by the Chief Administrative Officer ("CAO") at his facility. Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the outcome at the facility, he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023-24.

The Seventh Circuit requires strict adherence to the exhaustion requirement. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, an inmate is required to

exhaust only those administrative remedies that are available to him. *See Ross v. Blake*, 578

U.S. 632, 642 (2016). Administrative remedies become "unavailable" when prison officials

fail to respond to a properly filed inmate grievance or when prison employees thwart an

inmate from exhausting. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*,

438 F.3d at 809. Unavailability does not necessarily have to be caused by the misconduct

of the defendants; a process can be unavailable where an "inmate, through no fault of his

own, could not [access] the grievance process." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th

Cir. 2018). "The 'unavailable' exception is meant to be narrow." *Wallace v. Baldwin*, 55

F.4th 535, 543 (7th Cir. 2022) (citing *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022)).

It is also a fact-specific inquiry. *See Lanaghan*, 902 F.3d at 688. The unavailability of a

grievance process "lifts the PLRA exhaustion requirement entirely and provides

immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

### CONCLUSIONS OF LAW

Grievance No. K4-0824-4003, dated August 20, 2024, did not directly involve

Plaintiff's claims herein as it focused on a disciplinary ticket, not the defendants' alleged

misconduct in Counts 1-5. Moreover, this grievance was not exhausted before Plaintiff

filed this case on September 16, 2024, as it was not received by the ARB until January 16,

2025.

Grievance No. K4-1024-5348 addressed the claims in Count 4 herein. However,

Plaintiff did not file that grievance until October 4, 2024, after he had already filed this

lawsuit on September 16, 2024. As such, this grievance did not exhaust Plaintiff's claims

in this case.

Defendants produced no evidence to contradict or disprove Plaintiff's claim that he submitted the August 22, 2024, grievance by handing it to the correctional officer on duty, or his assertion that prison and ARB officials did not acknowledge its receipt or respond to it. Plaintiff's argument at the hearing was consistent with his written response to the instant motion. Plaintiff's written submission and his oral argument related to his unsuccessful attempts to obtain responses to the August 22, 2024, grievance to exhaust the claims it contained. These allegations stand uncontradicted.

The undersigned finds Plaintiff's description of his attempts to exhaust his August 22, 2024, grievance credible. Plaintiff submitted this grievance by the normal procedure, which relied on the crisis watch officer to place it in the grievance box for processing after it was handed to the officer by the inmate. After that, prison officials were responsible for transmitting the grievance to the counselor so it could be processed. Plaintiff made several attempts to confirm officials' receipt of the grievance, to no avail. This sequence of events indicates Plaintiff's attempt to exhaust the August 22, 2024, grievance was thwarted, through no fault of his own, from the time it left his hands and was picked up by the C/O. As such, the grievance process became unavailable to Plaintiff, and the PLRA exhaustion requirement as it pertains to the August 22, 2024, grievance was lifted. *See Hernandez*, 814 F.3d at 840.

To summarize, the undersigned concludes Defendants have not carried their burden of proof to demonstrate Plaintiff failed to exhaust his administrative remedies before filing this case.

The contents of the August 22, 2024, grievance described Plaintiff harming himself;

Krcmar and Rountree denying Plaintiff medical attention; Metheny spraying Plaintiff with mace; Rountree shackling Plaintiff; and Dye, Sulser, and Lewis denying Plaintiff medical attention or mental health services and returning him to the contaminated cell (Doc. 54, p. 11-12). These allegations mirror the claims in Counts 1, 2, 4, and 5 and are sufficient to exhaust those claims.

However, the August 22, 2024, grievance did not include any allegation that Sulser and Dye denied Plaintiff a shower and mattress in retaliation for his earlier lawsuits. Accordingly, that grievance did not exhaust the retaliation claim in Count 3, and it should be dismissed.

### RECOMMENDATIONS

Based on the foregoing, it is **RECOMMENDED** that the Court **DENY** the Motion for Summary Judgment on Exhaustion. (Doc. 51).

It is **FURTHER RECOMMENDED** that Count 3 should be **DISMISSED** from the action. If Count 3 is dismissed pursuant to this recommendation, Count 5 should be modified to read:

> Count 5:     State law claim for intentional infliction of emotional distress against all defendants for the conduct described in <u>Counts 1, 2, and 4</u> ~~Counts 1-4~~.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties may object to any or all the proposed dispositive findings in this Report and Recommendation within 14 days of service (*see* attached Notice). The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the

District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).

**DATED:  June 23, 2026.**

Gilbert C
Sison

Digitally signed by
Gilbert C Sison
Date: 2026.06.23
16:16:43 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**